## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|                                              |   |                          |
|----------------------------------------------|---|--------------------------|
| VICTOR ANDERSON,                             | : | 3:24-CV-408 (SVN)        |
| *Plaintiff*,                                 | : |                          |
|                                              | : |                          |
| v.                                           | : |                          |
|                                              | : |                          |
| DOC COMMISSIONER ANGEL QUIROS,               | : |                          |
| et al.,                                      | : | August 6, 2024           |
| *Defendants*.                                | : |                          |

## <u>INITIAL REVIEW ORDER</u>

*Pro se* Plaintiff Victor Anderson, a sentenced inmate[1] at Osborn Correctional Institution ("Osborn CI"), filed this civil rights action *pro se* under 42 U.S.C. § 1983.  He names seven Defendants:  Department of Correction ("DOC") Commissioner Quiros, Chief Medical Director Dr. Robert Richeson, Osborn CI Warden Martin, Regional Chief Operating Officer ("RCOO") of DOC Medical Figuruoa,[2] Dr. Henry Fedus, Dr. Frank Maletz, and Physician Assistant ("PA") Hannah Sullivan.  Plaintiff asserts claims under the United States Constitution and state common law negligence.[3]  Plaintiff seeks damages, as well as declaratory and injunctive relief.

The Prison Litigation Reform Act requires that federal courts review complaints brought

---

[1] Information on the Department of Correction ("DOC") website shows that Plaintiff was sentenced on January 19, 2021, to a term of imprisonment of five years.
*See* http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=184802 (last visited Aug. 5, 2024).  *See, e.g.*, *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *Kelley v. Quiros*, No. 3:22-cv-1425 (KAD), 2023 WL 1818545, at *2 (D. Conn. Feb. 8, 2023) (taking judicial notice of state prison website inmate locator information).
[2] Plaintiff also spells this Defendant's name as Figueroa.  The Court refers to this Defendant according to the spelling provided in the case caption.
[3] In his complaint, Plaintiff asserts his section 1983 and state law claims against "DOC Medical."  *See* Compl., ECF No. 1, ¶¶ 55, 61.  But Plaintiff has not named "DOC Medical" as a Defendant in his case caption.  Rule 10 of the Federal Rules of Civil Procedure states that "[t]he title of the complaint must name all the parties."  Fed. R. Civ. P. 10(a).  In any event, Plaintiff cannot proceed under section 1983 against "DOC Medical" because a state agency like the DOC and its medical department do not qualify as "person[s]" subject to suit under 42 U.S.C. § 1983.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Rose v. Conn., Dep't of Corrs. Osborn Med. Dep't*, No. 3:16-CV-1389 (CSH), 2017 WL 1197673, at *3 (D. Conn. Mar. 30, 2017) ("[A]s a unit of the Department of Correction, a state agency, the Osborn Medical Department is not a 'person' within the meaning of § 1983.").  Accordingly, the Court only considers whether Plaintiff has alleged plausible claims against the individuals named in the case caption.

by prisoners seeking relief against a governmental entity or officer or employee of a governmental

entity.  28 U.S.C. § 1915A(a).  Upon review, the Court must dismiss the complaint, or any portion

of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be

granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C.

§§ 1915(e)(2)(B), 1915A(b).  The Court has thoroughly reviewed all factual allegations in the

complaint and conducted an initial review pursuant to 28 U.S.C. § 1915A.[4]  Based on this initial

review, the Court orders as follows.

## I.    FACTUAL BACKGROUND

The Court does not include herein all of the allegations from the complaint but summarizes

only those facts necessary to provide context for initial review.

On November 27, 2023, Plaintiff fell on spilled water while walking and twisted his leg

and ankle.  He was told by correctional officers that he would not be seen until the morning unless

there was an emergency.

On November 28, 2023, Plaintiff could no longer walk due to the swelling and pain in his

leg and ankle.  Plaintiff saw the podiatrist, Dr. Henry Fedus, that day and explained his injury and

excruciating pain.

Dr. Fedus advised Plaintiff that he had an ankle sprain that would feel better in a week or

so.  Plaintiff and Dr. Fedus also met with PA Sullivan, who inquired whether Plaintiff should have

---

[4] It is well-established that "*[p]ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'"  *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).  Notwithstanding this liberal interpretation, however, a *pro se* complaint will not survive dismissal unless the factual allegations meet the plausibility standard.  *See Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  A complaint that includes only "labels and conclusions," "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of 'further factual enhancement,'" does not meet the facial plausibility standard.  *Id.* (internal quotation marks omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

an X-ray to determine whether he had a fracture.  Dr. Fedus answered in the negative for the stated reason that a fracture would not show on an X-ray for two weeks.  Thus, Dr. Fedus wrote that Plaintiff should have an X-ray in two weeks and prescribed him with an ACE bandage, crutches, and a cold pack.  Plaintiff's cane was taken from him by Dr. Fedus and PA Sullivan, as he was not permitted to have both crutches and a cane.

On December 12, 2023, Plaintiff returned the crutches as instructed.  At that time, he was advised that PA Sullivan would call him later about his cane.  However, neither PA Sullivan nor anyone else contacted him about return of his cane.  Without a cane or crutches, Plaintiff had to "hop around" in pain and skip meals because he could not make it to the dining hall.  He received no medication for his pain.

Dr. Fedus ordered an X-ray of Plaintiff's ankle on December 21, 2023.  This X-ray showed that he indeed had a fracture.  That day, Dr. Fedus ordered assistive devices, braces, crutches, and an ACE wrap for Plaintiff.  He also ordered pain medication, though Plaintiff did not receive it until mid-January of 2024.  Also on that day, Plaintiff saw PA Sullivan to discuss the results of the X-ray and his lack of medical care for the fracture and pain management.  She indicated that she would discuss his case with Dr. Fedus and Dr. Maletz, an orthopedist.

Plaintiff saw Dr. Maletz on January 2, 2024.  Dr. Maletz told Plaintiff that, if an X-ray had been performed on November 28, 2023, it would have shown the fracture and Plaintiff would have been placed in a cast at the time of injury.  Plaintiff was told he would receive another X-ray on January 15, 2024, but he did not get the X-ray until February 20, 2024.

During the following weeks, Plaintiff complained of pain and difficulty walking but still lacked medication and a second X-ray.  Plaintiff wrote inmate requests to Dr. Fedus and Dr. Maletz for an MRI or CT scan to see if there was any ligament damage.  He also wrote to RCOO Figuruoa.

He received no responses from any of these Defendants.

On January 26, 2024, he was notified that his administrative remedy dated January 16, 2024, was upheld.  The response indicated that RCOO Figuruoa was aware of his situation and would review his case with the medical staff involved. As of March 10, 2024, Plaintiff had not heard from RCOO Figuruoa.

On February 20, 2024, Plaintiff had his second X-ray, which looked similar to his earlier X-ray.

On February 23, 2024, Plaintiff was called to the hospital and instructed to bring his crutches and cane (although Plaintiff's cane had not been returned to him after November 28, 2023).  He was advised that Dr. Maletz ordered the crutches returned and medical records showed his injury was healed or nearly healed.

Plaintiff claims that as of the date of his complaint in this suit, he was still experiencing pain in his left leg and ankle and walking with a limp.  He represents that he has not received further medical care from either Dr. Maletz or Dr. Fedus.

Plaintiff alleges Defendants have violated his Eighth Amendment rights and his Fourteenth Amendment rights to equal protection and due process.  He also alleges a state law claim for negligence.  He sues all Defendants in their official and individual capacities and requests damages, a declaratory judgment, and injunctive relief.

## II.    DISCUSSION

The Court considers whether Plaintiff has alleged any plausible claims under state and federal law.

A.  <u>Official Capacity Claims</u>

Plaintiff has sued Defendants in both their individual and official capacities.  Plaintiff may pursue individual capacity claims against Defendants for monetary damages, but may not seek injunctive relief against Defendants in their individual capacities, as Defendants would not have the authority to provide injunctive relief in their individual capacities.  *See Kuck v. Danaher*, 822 F. Supp. 2d 109, 143 (D. Conn. 2011) (citations omitted).

Nor may Plaintiff proceed with claims for damages against Defendants in their official capacities, as such claims are effectively suits against the state, and the Court cannot identify that any exception to the state's Eleventh Amendment immunity applies here.  *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (citations omitted).

Plaintiff may proceed with a request for injunctive or declaratory relief against a Defendant in his or her official capacity only to the extent he alleges an ongoing constitutional violation.  *See Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254–55 (2011) (citing *Ex parte Young*, 209 U.S. 123 (1908)).  Further, a claim for injunctive relief can only proceed against Defendants who "plausibly have the authority to grant the prospective relief."  *See Smith v. Perez*, No. 3:19-CV-1758 (VAB), 2020 WL 2307643, at *6 (D. Conn. May 8, 2020) (citations omitted).  "In the prison context, a request for injunctive relief must always be viewed with great caution so as not to immerse the federal judiciary in the management of state prisons."  *Fisher v. Goord*, 981 F. Supp. 140, 167 (W.D.N.Y. 1997) (citing *Farmer v. Brennan*, 511 U.S. 825, 846–47 (1994)) (citations omitted).

As Plaintiff's complaint suggests that he is still subject to continuing indifference to his serious medical needs for his ankle injury and pain, the Court will permit Plaintiff to proceed on

his official capacity claims for injunctive relief against Defendants RCOO Figuruoa, Dr. Fedus, and Dr. Maletz, who could all plausibly afford him the requested relief.

Plaintiff also requests a declaratory judgment that Defendants subjected him to constitutional violations.[5]  Declaratory relief operates in a prospective manner to allow parties to resolve claims before either side suffers significant harm.  *See In re Combustion Equip. Assocs., Inc.*, 838 F.2d 35, 37 (2d Cir. 1988).  To the extent Plaintiff's claims may be construed as alleging any ongoing constitutional violation, Plaintiff's request for a declaratory judgment to state that Defendants are violating his constitutional rights is unnecessary.  If Plaintiff prevails on his Eighth Amendment medical indifference claims, a judgment in his favor would serve the same purpose as a declaration that Defendants have subjected him to deliberate indifference in violation of the Eighth Amendment.  Thus, Plaintiff's request for declaratory relief is not distinct from the relief sought in his section 1983 claims and is dismissed.  *See, e.g.*, *United States v. $2,350,000.00 in Lieu of One Parcel of Prop. Located at 895 Lake Ave. Greenwich, Conn.*, 718 F. Supp. 2d 215, 229 n.7 (D. Conn. 2010) (noting that if property is not forfeited, receiver-claimants would have been shown to be prevailing innocent owners and declaration to that effect would be redundant); *see also Kuhns v. Ledger*, 202 F. Supp. 3d 433, 443 (S.D.N.Y. 2016) (noting dismissal of declaratory judgment request warranted where relief sought would duplicate other causes of action).  Thus, the request for declaratory judgment will be dismissed.

Therefore, to the extent any claims are brought against Defendants in their individual capacity for injunctive relief, or in their official capacity for damages, such claims are dismissed.

---

[5] Plaintiff's request for a declaratory judgment that Defendants subjected him to state common law negligence is barred by the Eleventh Amendment.  *See Vega v. Semple*, 963 F.3d 259, 284 (2d Cir. 2020) ("[A] claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment, and the [Supreme] Court extended the principle to apply equally to state-law claims brought into federal court under pendent jurisdiction." (internal quotation marks omitted) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984))).

Plaintiff's request for declaratory relief is also dismissed.  Plaintiff may proceed with his official capacity claims for injunctive relief against Defendants Dr. Fedus, Dr. Maletz, and RCOO Figuruoa.

B. <u>Personal Involvement</u>

A plaintiff seeking monetary damages from a defendant must allege facts that establish the personal involvement of that defendant in the alleged constitutional violation.  *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (internal quotation marks and citations omitted)).  This is true with respect to supervisory officials, as well.  *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020) ("[A] plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability.").

Plaintiff seeks to hold supervisory officials liable for the alleged failures of DOC medical staff to adequately diagnose and treat his ankle injury.  Specifically, he asserts claims under section 1983 against high-ranking officials:  Commissioner Quiros, Warden Martin, and Chief Medical Director Richeson.  The personal involvement of a supervisory official is not established "by reason of [the defendant's] supervision of others who committed the violation," however.  *Id.* at 619.

Because Plaintiff has not alleged any facts in the body of his complaint about conduct by these Defendants and the Second Circuit has established that a plaintiff must plead that supervisory defendants violated a constitutional amendment "by [their] own conduct, not by reason of [their] supervision of others who committed the violation," *id.*, Plaintiff may not proceed on his constitutional claims against Commissioner Quiros, Warden Martin, and Chief Medical Director

Richeson.  *See Oh v. Quiros*, No. 3:24-CV-148 (SVN), 2024 WL 896605, at *3 (D. Conn. Mar. 1, 2024) (dismissing claims under section 1983 against Nurse Supervisor absent allegations about her conduct that had violated the plaintiff's rights); *Perez*, 2020 WL 2307643, at *5 (dismissing all claims against defendants where complaint established no connection between defendants and alleged constitutional violations).

C.  Fourteenth Amendment Due Process

Plaintiff claims violation of his rights under the Fourteenth Amendment's Due Process Clause.  The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property.  U.S Const. amend. XIV, § 1.  While procedural due process prohibits deprivations of life, liberty, or property without constitutionally adequate procedures, substantive due process protects these substantive rights "no matter the process employed by the State."  *Case v. Anderson*, No. 16 Civ. 983 (NSR), 2017 WL 3701863, at *14 (S.D.N.Y. Aug. 25, 2017) (citing *Madden v. City of Meriden*, 602 F. Supp. 1160, 1166 (D. Conn. 1985)).

Plaintiff's complaint raises concerns about his medical treatment, not any due process deprivation arising from inadequate procedural safeguards.  Thus, the Court construes the complaint as asserting substantive due process violations.  But the Supreme Court has instructed that, "where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing [the] claims."  *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) (cleaned up) (citation omitted); *see also United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997) (explaining that, "if a constitutional claim is covered by a specific constitutional provision, such as the . . . Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of

substantive due process"). As Plaintiff is a sentenced inmate, his claims are cognizable under the Eighth, not the Fourteenth Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (holding deliberate indifference claims of sentenced inmates are cognizable under the Eighth Amendment, while deliberate indifference claims of unsentenced inmates are cognizable under the Fourteenth Amendment). As the Eighth Amendment provides an explicit textual source of constitutional protection for Plaintiff's complaints about his medical mistreatment arising during his confinement as a sentenced inmate, the Court declines to consider his claims under the substantive due process provision of the Fourteenth Amendment. *Santana v. Quiros*, No. 3:21-CV-376 (SVN), 2022 WL 16706959, at *10 (D. Conn. Nov. 4, 2022) (collecting cases); *Kaminski v. Oniyuke*, No. 3:19-cv-58 (SRU), 2019 WL 1877075, at *4 (D. Conn. Apr. 26, 2019) (holding that, on initial screening of the complaint, "if [the plaintiff's substantive due process claim is based on the same action(s) that gave rise to his Eighth Amendment claim for deliberate indifference to medical needs, then his due process claim will be dismissed").

D.  Fourteenth Amendment Equal Protection

Plaintiff also asserts violation of his rights under the Fourteenth Amendment's Equal Protection Clause.

To state an equal protection claim, a plaintiff must allege facts showing that: (1) he or she was treated differently from similarly situated individuals and (2) that the discriminatory or different treatment was based on "impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (internal quotation marks omitted) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609–10 (2d Cir. 1980)). A plaintiff must

demonstrate evidence of "purposeful discrimination . . . directed at an identifiable or suspect class." *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (citations omitted).

When a suspect classification is not at issue, the Equal Protection Clause still requires that individuals are treated the same as "similarly situated individuals." *Fortress Bible Church v. Feiner*, 694 F.3d 208, 221–22 (2d Cir. 2012). Thus, Plaintiff may bring a "class of one" equal protection claim "where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (citations omitted). In the Second Circuit, a class-of-one plaintiff "must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006) (citation omitted). The similarity between the plaintiff and comparators provides "an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose—whether personal or otherwise—is all but certain." *See Witt v. Vill. of Mamaroneck*, No. 12-CV-8778 (ER), 2015 WL 1427206, at *5 (S.D.N.Y. Mar. 27, 2015) (quoting *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005)), *aff'd*, 639 F. App'x 44 (2d Cir. 2016).

Sentenced inmates are not members of a protected or suspect class, *Gonzalez v. Hannah*, No. 3:19-cv-1522 (VLB), 2020 WL 3256869, at *8 (D. Conn. June 16, 2020) (citations omitted), and Plaintiff has not alleged facts to suggest that he was subject to disparate treatment from comparators due to any "impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Diesel*, 232 F.3d at 103 (internal quotation marks omitted) (quoting *LeClair*, 627 F.2d at 609–10). Nor does Plaintiff allege facts to suggest that he was discriminated against as a "class of

10

one" based on intentional disparate treatment from comparators without a rational basis for the difference in treatment. *Vill. of Willowbrook*, 528 U.S. at 564. No allegations support a claim that he was treated differently from any other inmate or highly similar comparator. Accordingly, Plaintiff's complaint fails to suggest any plausible Fourteenth Amendment equal protection violation.

      E.  <u>Eighth Amendment</u>

The Court considers whether Plaintiff has alleged any plausible claims of medical indifference in violation of his Eighth Amendment protection against cruel and unusual punishment.

The Supreme Court has long recognized that prison officials violate the Eighth Amendment if they are deliberately indifferent to the serious medical needs of a sentenced prisoner. *See Darby v. Greenman*, 14 F.4th 124, 128 (2d Cir. 2021) (citing *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976)). The first element is objective. Establishing an objectively serious deprivation requires the court to make two separate inquiries. First, the court must determine whether the inmate "was actually deprived of adequate medical care." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006), *abrogated on other grounds by Kravitz v. Purcell*, 87 F.4th 111 (2d Cir. 2023). The medical providers are only required to have "act[ed] reasonably." *Id.* at 279–80 (quoting *Farmer*, 511 U.S. at 845). The second inquiry requires the court to determine "whether the inadequacy in medical care is sufficiently serious," which "requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Id.* at 280 (citing *Helling v. McKinney*, 509 U.S. 25, 32–33 (1993)). Thus, although the objective element sometimes is referred to as the seriousness of the medical need, that is only one factor evaluated in determining the seriousness of the deprivation of medical care. *See id.*

A "sufficiently serious" deprivation can exist if the plaintiff suffers from an urgent medical condition that can cause death, degeneration, or extreme or chronic pain. *See Brock v. Wright*, 315 F.3d 158, 162–63 (2d Cir. 2003); *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). A medical condition may not initially be serious, but may become serious because it is degenerative and, if left untreated or neglected for a long period of time, will "result in further significant injury or the unnecessary and wanton infliction of pain." *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)). The Second Circuit has identified several factors that are "highly relevant" to the question of whether a medical condition is sufficiently serious, including "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance*, 143 F.3d at 702–03 (internal quotation marks and citation omitted). In instances such as this case where "a prisoner receives some care, but allegedly inadequate care," the court's consideration of the seriousness of the plaintiff's condition must "examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner," *Sanders v. Laplante*, No. 3:19-cv-01151 (CSH), 2019 WL 5538118, at *3 (D. Conn. Oct. 25, 2019) (internal quotation marks and citations omitted).

The second element is subjective. The inmate must show "that the official acted with a culpable state of mind of 'subjective recklessness,' such that the official knew of and consciously disregarded 'an excessive risk to inmate health or safety.'" *Thomas v. Wolf*, 832 F. App'x 90, 92 (2d Cir. 2020) (summary order) (citations omitted). Negligence that would support a claim for medical malpractice does not necessarily rise to the level of deliberate indifference and is not cognizable under section 1983. *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003)

(citation omitted).   Nor does a disagreement over the treatment provided show deliberate indifference.  *See Wright v. Rao*, 622 F. App'x 46, 47 (2d Cir. 2015) (summary order) (citations omitted).

For purposes of initial review, the Court assumes that Plaintiff has sufficiently alleged that he had a serious need for adequate medical treatment for his fractured ankle, continuing pain, and difficulty walking.  Accordingly, the Court turns next to consideration of the subjective element for each named Defendant who has not previously been dismissed.

### 1.  Dr. Fedus

Plaintiff's allegations indicate that Dr. Fedus failed to assess properly Plaintiff's injury and his treatment and pain needs on November 28, 2023.  Plaintiff alleges that Dr. Fedus's failure to provide him with a diagnostic X-ray on November 28, 2023—as suggested by PA Sullivan— hindered his recovery from his ankle fracture so that he has endured continuing pain and difficulty walking.  Construed most favorably to Plaintiff, these allegations support an inference that Dr. Fedus acted with a conscious disregard to Plaintiff's serious medical needs for his ankle injury and pain.  Although a more developed record may show that Dr. Fedus committed mere negligence, the Court will permit Plaintiff to proceed on his Eighth Amendment claims of medical indifference against Dr. Fedus in his individual capacity.

### 2.  Dr. Maletz

Plaintiff claims that Dr. Maletz also rendered inadequate medical treatment for his ankle injury and pain and ordered removal of his crutches.  These allegations may present Plaintiff's disagreement with Dr. Maletz's treatment decisions.  At this early stage in the case, however, the Court will permit Plaintiff to proceed on Eighth Amendment claims for damages against Dr.

Maletz for his deliberate indifference to Plaintiff's treatment for his ankle injury and pain management needs.

### 3. PA Sullivan

Plaintiff claims that PA Sullivan violated his Eighth Amendment rights by failing to provide him with a timely treatment, an X-ray for his ankle on November 28, 2023, and adequate pain relief.

Plaintiff alleges that PA Sullivan heard his complaints and communicated them to his treating physicians, Dr. Fedus and Dr. Maletz.  Plaintiff has not alleged facts to suggest that PA Sullivan had the ability to overrule the physicians' medical diagnostic, treatment, and pain relief decisions.  Thus, with respect to PA Sullivan's alleged failures concerning his treatment, X-rays, and pain relief, Plaintiff has not alleged facts to support an inference that PA Sullivan acted with a "sufficiently culpable state of mind" to support an Eighth Amendment violation.  *Farmer*, 511 U.S. at 834 (internal quotation marks and citations omitted); *see Rahim v. Barsto*, No. 3:22-cv-619 (MPS), 2022 WL 2704102, at *5 (D. Conn. July 12, 2022) (dismissing Eighth Amendment claim where facts failed to indicate defendant could have but failed to exercise an ability to provide plaintiff with a more immediate medical appointment of a new mattress in response to his inmate requests); *Warwick v. Doe*, No. 3:22-cv-227 (JAM), 2020 WL 2768804, at *5 (D. Conn. May 27, 2020) (explaining that absent facts suggesting that the defendant actually had and failed to exercise the power to get plaintiff in to see a dental surgeon sooner, plaintiff's allegations amounted to negligence).

Plaintiff also alleges that he was advised PA Sullivan would call him about his cane after he returned his crutches on December 12, 2023, but she failed to do so.  Plaintiff's complaint does not allege facts reflecting that PA Sullivan was aware of his serious need for walking support after

return of his crutches on December 12, 2023.  Given the early stage of this case, however, the Court will afford Plaintiff the opportunity to proceed on his Eighth Amendment claim against PA Sullivan regarding her failure to communicate with him about his need for walking support after return of his crutches for further development of the record, to determine if the facts suggest deliberate indifference to Plaintiff's medical needs, as opposed to negligence.

### 4.  RCOO Figuruoa

Plaintiff alleges that an administrative remedy response advised that RCOO Figuruoa was aware of his situation and would review his case with medical staff in response.  Generally, "[a] supervisor's mere knowledge . . . is not sufficient because that knowledge does not amount[ ] to the supervisor's violating the Constitution."  *Tangreti*, 983 F.3d at 616–17 (alteration in original) (internal quotation marks and citation omitted).  But construed most broadly and credited as true, Plaintiff's allegations suggest that RCOO Figuruoa was not merely aware of Plaintiff's need for medical care but that RCOO Figuruoa also promised—but failed—to take remedial action.  For initial pleading purposes, Plaintiff's allegations are sufficient to support his claim that Figuruoa had direct involvement in an Eighth Amendment violation arising from his or her indifference to Plaintiff's serious medical needs.  Accordingly, Plaintiff may proceed on his Eighth Amendment claim against RCOO Figuruoa in his or her individual capacity for further development of the record.

### F.  State Law Negligence Claim

Plaintiff also asserts claims for negligence against Defendants on the same factual grounds. Connecticut General Statutes section 4-165 bars negligence claims against state employees acting within the scope of their employment.  Conn. Gen. Stat. § 4-165(a) ("No state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the

discharge of his or her duties or within the scope of his or her employment."); *see also Miller v. Egan*, 265 Conn. 301, 319 (2003) (state employees are not "personally liable for their negligent actions performed within the scope of their employment"). Defendants are all state employees who were acting within the scope of their employment. Thus, they are generally immune to state negligence tort claims. However, Plaintiff has plausibly pleaded Eighth Amendment deliberate indifference claims against Dr. Fedus, Dr. Maletz, PA Sullivan, and RCOO Figuruoa that necessarily require a showing of at least reckless conduct. Thus, the Court will permit Plaintiff to assert similar state law claims of recklessness against Dr. Fedus, Dr. Maletz, PA Sullivan, and RCOO Figuruoa for further development of the record. Conn. Gen. Stat. § 4-165(a); *see McGraw v. Doe*, No. 3:23-CV-229 (SVN), 2023 WL 5894727, at *4 (D. Conn. Sept. 11, 2023); *see also Miller*, 265 Conn. at 319 (immunity does not apply to "reckless" conduct).[6]

## ORDERS

**Based on the foregoing, the Court issues the following orders:**

Plaintiff may proceed on his individual capacity claims based on:

(1) Eighth Amendment violation based on medical deliberate indifference against Dr. Fedus, Dr. Maletz, PA Sullivan, and RCOO Figuruoa;

(2) State common law negligence against Dr. Fedus, Dr. Maletz, PA Sullivan, and RCOO Figuruoa; and

Plaintiff may proceed on his official capacity claims for injunctive relief based on:

---

[6] If the Court later determines that Plaintiff cannot prevail on his federal law claims, the Court may decline to exercise supplemental jurisdiction over any state law claims under 28 U.S.C. § 1367. The Court's determination for purposes of an initial review order under 28 U.S.C. § 1915A that any claim may proceed against a Defendant is without prejudice to the right of any Defendant to seek dismissal of any claims by way of a motion to dismiss or motion for summary judgment.

(3) Eighth Amendment violation based on ongoing medical deliberate indifference against Dr. Fedus, Dr. Maletz, and RCOO Figuruoa.

All other constitutional federal and state law claims are DISMISSED. Defendants Commissioner Quiros, Chief Medical Director Richeson, and Warden Martin are all DISMISSED from this action.

**Plaintiff has two options as to how to proceed in response to this Initial Review Order:**

(1) If Plaintiff wishes to proceed immediately **only** on the claims set forth above against Dr. Fedus, Dr. Maletz, and RCOO Figuruoa in their individual and official capacities and PA Sullivan in her individual capacity, he may do so without further delay. If Plaintiff selects this option, he shall file a notice on the docket on or before **September 5, 2024**, informing the Court that he elects to proceed with service as to the claims set forth above in items one through three. After Plaintiff files his notice, the Court will begin the effort to serve process on Defendants Dr. Fedus, Dr. Maletz, and RCOO Figuruoa in their individual and official capacities and PA Sullivan in her individual capacity as described above.

(2) Alternatively, if Plaintiff wishes to attempt to replead any of the claims asserted in his complaint that have been dismissed in order to attempt to state a viable claim, he may file an amended complaint by **September 5, 2024**. **An amended complaint, if filed, will completely replace the complaint, and the Court will not consider any allegations made in the original complaint in evaluating any Amended Complaint.** The Court will review any amended complaint after filing to determine whether it may proceed to service of process on any defendants named therein. If Plaintiff elects to file an amended complaint, the complaint this Initial Review Order addresses will **not** proceed to service of process on any defendant.

If the Court receives no response from Plaintiff by **September 5, 2024**, the Court will presume that Plaintiff wishes to proceed on the complaint as to the claims permitted to go forward in this Initial Review Order, and Plaintiff will have to show good cause if he seeks to amend the complaint in any manner in the future.

**<u>Changes of Address</u>.**  If Plaintiff changes his address at any time during the litigation of this case, Local Rule 83.1(c) provides that he **MUST** notify the Court.  Failure to do so can result in the dismissal of the case.  Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write "PLEASE NOTE MY NEW ADDRESS" on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  If Plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address.

Plaintiff should also notify Defendants or counsel for Defendants of his new address.

<u>*/s Sarala V. Nagala*</u>
SARALA V. NAGALA
United States District Judge

It is so ordered this 6th day of August, 2024, at Hartford, Connecticut.