## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| VICTOR ANDERSON, | ) | 3:24-CV-00408 (SVN) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DOC COMMISSIONER ANGEL | ) | |
| QUIROS, ET AL, | ) | September 25, 2025 |
| *Defendants*. | | |

### RULING AND ORDER ON DEFENDANTS' MOTION TO DISMISS

Sarala V. Nagala, United States District Judge.

In this civil rights action, Plaintiff Victor Anderson, who was incarcerated in the custody of Connecticut Department of Correction ("DOC") at the start of this action, alleges that Defendants Regional Chief Operating Officer ("RCOO") Temple Figueroa, Dr. Henry Fedus, Dr. Frank Maletz, and Physician Assistant ("PA") Hannah Sullivan violated his Eighth Amendment rights when they delayed x-rays and provision of pain medication following a fracture in his left foot, and otherwise failed to provide adequate treatment for his injury. Plaintiff also seeks damages against Defendants under a state law claim for recklessness.[1]

Defendants have filed a motion to dismiss, arguing that Plaintiff has failed to state a claim for deliberate indifference under the Eighth Amendment and recklessness under state law, and that they are entitled to qualified immunity. For the reasons explained below, Defendants' motion is granted with respect to Defendant Figueroa without leave to amend; granted with respect to Defendant Sullivan with leave to amend; and granted in part and denied in part with respect to Defendants Fedus and Maletz.

---

[1] Plaintiff originally sought injunctive and declaratory relief against Defendants, but has withdrawn the request for these types of relief given that he is no longer in DOC custody. Pl.'s Opp'n. Br., ECF No. 36 at 8 n.1.

## I.    FACTUAL BACKGROUND

Plaintiff's amended complaint, ECF No. 20, alleges the following facts, which are taken as true for purposes of a motion to dismiss.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

On November 27, 2023, while incarcerated at Osborn Correctional Institution, Plaintiff slipped and fell on water, "twisting his leg and ankle."  Am. Compl., ECF No. 20 ¶ 11.  The next morning, Plaintiff's leg and ankle "had swollen up so he could not walk properly[,] and he was in a lot of pain."  *Id.* ¶ 14.  The same day, Plaintiff reported to Dr. Fedus for an initial examination.  *Id.* ¶ 17.  Plaintiff described how he could not place "any pressure" on his left leg and ankle area without "excruciating pain."  *Id.* ¶ 17.  Dr. Fedus concluded that Plaintiff had a high ankle sprain and "ordered rest, a cold pack (3 days), an ace bandage, elevation, and crutches (2 weeks)."  *Id.* ¶ 18; Nov. 28 Fedus Rep., Ex. B, Am. Compl., ECF No. 20-1 at 4.

Plaintiff then met with Dr. Fedus and PA Sullivan together.  PA Sullivan asked Dr. Fedus if he wanted to send Plaintiff "down the hall" for an x-ray to "be sure there were no fractures or bone breakage"; Dr. Fedus declined to order an x-ray, stating that even if there was a fracture, it would not be visible for two weeks.  ECF No. 20 ¶¶ 19–20.  Dr. Fedus wrote in the medical note: "X-ray in ~ 2 wks.  will show if hairline is present."  ECF No. 20-1 at 4; ECF No. 20 ¶ 21.  Plaintiff was given an ace bandage, an ice pack, and a set of crutches to use, but was also required to turn in his cane, as Dr. Fedus and PA Sullivan asserted that he could not have both simultaneously.  ECF No. 20 ¶ 24.  Approximately two weeks later, on or about December 12, 2023, Plaintiff was told "Medical" required him to return the crutches.  *Id.* ¶ 25.  When he returned the crutches, he asked about receiving his cane back, but was told that he would have to "wait for PA Sullivan to call him back down" to have the cane returned.  *Id.*  It was never returned to him.  *Id.* ¶ 45.

On December 16, Plaintiff completed an Inmate Request Form ("IRF"), pursuant to the DOC administrative procedures, addressed to "Provider Hannah." IRF, Ex. C, Am. Compl., ECF No. 20-1 at 6. The form noted that Plaintiff was in pain and that he "was told [he] would get a[n] []x-ray" for his ankle approximately two and a half weeks earlier, but had still not received it. *Id.* Plaintiff received a response on December 19, stating that Plaintiff had an order for an x-ray and would be called for his x-ray "any day now." *Id.* On December 21, Dr. Fedus placed the order for Plaintiff's x-ray. Fedus Order, Ex. D, Am. Compl., ECF No. 20-1 at 11. The x-ray was taken on December 21 and reflected a "Weber B oblique distal fibula fracture." Dec. 21 Imaging Rep., Ex. E, Am. Compl., ECF No. 20-1 at 13. Plaintiff alleges that from on or about December 12 until he received the x-ray on December 21, he "hopped around in pain, not eating because he could not make it to the chow hall," and he "did not receive any pain medication at all." ECF No. 20 ¶ 26.

On December 21, Dr. Maletz reviewed Plaintiff's x-ray through an offsite orthopedics consult. *Id.* ¶ 32. Dr. Maletz recommended a treatment plan of a splint, crutches for four weeks from the date of injury, follow-up imaging at four weeks post-injury, and no contact sports until full rehabilitation. *Id.*; Dr. Maletz Note, Ex. F, Am. Compl., ECF No. 20-1 at 15. That day, based on Dr. Maletz's consult, Dr. Fedus ordered new assistive devices, including braces and crutches, and an ace wrap. ECF No. 20 ¶ 33; Fedus Dec. 21 Order, Ex. G, Am. Compl., ECF No. 20-1 at 18. Dr. Fedus also prescribed Plaintiff Meloxicam for his pain. ECF No. 20 ¶ 33; Med. Note, Ex. L, Am. Compl., ECF No. 20-1 at 27. Additionally, Plaintiff met with PA Sullivan to discuss his "continuing pain and discomfort," and PA Sullivan informed Plaintiff that she discussed Plaintiff's case with Dr. Fedus and Dr. Maletz and would "follow their recommendations." ECF No. 20 ¶ 36. On December 29, Plaintiff told a non-party nurse that he had still not received his prescribed

Meloxicam, and he was informed that the medication needed to be reordered.  ECF No. 20 ¶ 37; Nurse Consult, Ex. M, Am. Compl., ECF No. 20-1 at 30.

On January 2, 2024, Plaintiff met in person with Dr. Maletz, who answered Plaintiff's questions and noted that "already in the interstices there is consolidation and no widening of the mortise," and that "[i]mages for follow up have been appropriately ordered[.]"  Med. Note, Ex. H, Am. Compl., ECF No. 20-1 at 20; ECF No. 20 ¶ 38.  Plaintiff alleges that, at this visit, Dr. Maletz told him that "if the X-ray was done on November 28, 2023, they would have seen the fracture, and he would have been placed in a cast at the time of injury."  ECF No. 20 ¶ 38.

On February 20, 2024, Plaintiff received a follow-up x-ray of his left ankle which, per the x-ray technician, "looked the same" as the x-ray taken on December 21, 2023.  *Id.* ¶ 44.  Dr. Maletz stated in his imaging report dated February 20 that "the distal left fibular fracture cleft is still well seen," but that the "distal left fibular fracture [was] now healed or nearly healed."  *Id.* ¶ 47; Feb. 20 Imaging Rep., Am. Compl., Ex. K, ECF No. 20-1 at 24.  On or about February 23, at Dr. Maletz's direction, Plaintiff was ordered to return his crutches, leaving him with no form of aid for walking.  ECF No. 20 ¶¶ 45–46.

In the weeks after his January 2 visit, Plaintiff "wrote over ten medical requests about his pain, discomfort, problems walking, lack of medication, and the lack of X-rays."  *Id.* ¶ 39.  On an unspecified date, he sent a medical request to Dr. Fedus and Dr. Maletz requesting an MRI or CT scan to see if he had ligament damage, but never received a response to his request.  *Id.* ¶ 40.  Plaintiff also submitted a Health Services Administrative Remedy ("HSAR") dated January 16, 2024.  *Id.* ¶ 41; ECF No. 20-1 at 7–9.  In the HSAR, Plaintiff describes the incidents leading up to the filing of the HSAR, including the consultations with Dr. Fedus and Dr. Maletz, being forced to forgo eating because he was without walking support, and the delay in having his initial x-ray

performed.  ECF No. 20-1 at 7–8.  Plaintiff received a response to the HSAR on January 25, 2024, stating that it "was reviewed with RCOO Figueroa," that "she is aware of [Plaintiff's] situation," and that she "will review this with the providers mentioned."  *Id.* at 9.  On January 27, 2024, Plaintiff wrote again to RCOO Figueroa, this time by letter, requesting an update on "what [her] finding was, and how did [her] review go with the providers."  Jan. 27 Letter, Ex. J, Am. Compl., ECF No. 20-1 at 22; ECF No. 20 ¶ 43.  Plaintiff received no further response from RCOO Figueroa. *See* ECF No. 20 ¶ 43.

On April 8, 2024, Plaintiff submitted another IRF, addressed to Dr. Maletz and Dr. Fedus and others, stating he was "still in a lot of pain," and he "can't do anything [he] use[d] to do on [his left] leg and ankle," and that he had not seen Dr. Maletz or Dr. Fedus in more than two months. *Id.* ¶ 48; April 8 IRF, Ex. N, Am. Compl., ECF No. 20-1 at 32.  Plaintiff received a response the same day stating he was "on the list to see the provider," ECF No. 20-1 at 32, but Plaintiff has not seen either provider since January 2, 2024, regarding his ankle fracture.  ECF No. 20 ¶ 50.  Plaintiff alleges he "still cannot walk without a limp," "still suffers from considerable pain and discomfort in his leg and ankle," and "suffers daily and his normal daily life no longer exists."  *Id.* ¶ 52.

## II.    LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a case or cause of action for failure to state a claim upon which relief can be granted.  When determining whether a complaint states a claim upon which relief can be granted, highly detailed allegations are not required, but the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Id.* at 678. This plausibility standard is not a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.* In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citation omitted).

The Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008), and "a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.[2]

## III.    DELIBERATE INDIFFERENCE

First, the Court holds that Plaintiff has failed to plead a plausible Eighth Amendment claim against Defendants Figueroa or Sullivan, but has plausibly alleged such a claim against Defendants Fedus and Maletz with respect to a delay in follow-up treatment beginning in January of 2024. Thus, Defendants' motion to dismiss is granted in part and denied in part as to Plaintiff's Eighth Amendment claim.

---

[2] Plaintiff argues that the Court has already held Plaintiff's allegations are sufficient to plausibly state Eighth Amendment and recklessness state law claims against all Defendants. *See* ECF No. 36 at 10–11, 19. While it is true that the legal standard for an initial review order is substantially the same as that for a motion to dismiss, Plaintiff's initial complaint was filed *pro se*, and thus an analysis of any claims contained within it were due a special solicitude not granted to counseled complaints. *See Fowlkes v. Ironworkers Loc. 40*, 790 F.3d 378, 387 (2d Cir. 2015). Because Defendants' motion to dismiss is made against a now-counseled complaint, the Court undertakes a new review here under the motion to dismiss standard.

A.  Legal Standard

"The Eighth Amendment prohibits the infliction of 'cruel and unusual punishments.'"
*Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (quoting U.S. Const. amend. VIII).  "Under the
Eighth Amendment, States must not deprive prisoners of their 'basic human needs—*e.g.*, food,
clothing, shelter, medical care, and reasonable safety.'"  *Phelps v. Kapnolas*, 308 F.3d 180, 185
(2d Cir. 2002) (per curiam) (quoting *Helling v. McKinney*, 509 U.S. 25, 32 (1993)).  "Although
the Constitution does not require 'comfortable' prison conditions, the conditions of confinement
may not 'involve the wanton and unnecessary infliction of pain.'"  *Walker*, 717 F.3d at 125
(quoting *Rhodes v. Chapman*, 452 U.S. 337, 347, 349 (1981)).  To sufficiently state a claim for
inadequate medical care, Plaintiff must present evidence "showing the offending official's
'deliberate indifference to [his] serious medical needs.'"  *Thomas v. Wolf*, 832 F. App'x 90, 92 (2d
Cir. 2020) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)).  The standard of deliberate
indifference to inmate health or safety includes both subjective and objective components.  *See
Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

*1.  Objective Prong*

The first component is objective, requiring the prisoner to demonstrate that the alleged
deprivation of medical care was "'sufficiently serious.'"  *Farmer*, 511 U.S. at 834 (quoting *Wilson
v. Seiter,* 501 U.S. 294, 298 (1991)).  The prisoner must "show that he was 'actually deprived of
adequate medical care' by an official's failure 'to take reasonable measures in response to a
[sufficiently serious] medical condition.'"  *Thomas*, 832 F. App'x at 92 (brackets in original)
(quoting *Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006), *abrogated on other grounds
as recognized by Kravitz v. Purcell*, 87 F.4th 111, 119, 122 (2d Cir. 2023)).

This objective showing in turn requires a court to make two inquiries.  First, the Court must
determine whether the inmate was "actually deprived of adequate medical care."  *Salahuddin*, 467

F.3d at 279. Second, the Court must determine "whether the inadequacy in medical care is sufficiently serious," requiring an examination of "how the offending conduct is inadequate and what harm, if any, the inadequacy has or will likely cause the prisoner." *Id.* at 280. This examination differs based on whether the issue is failure to provide any medical treatment, inadequate treatment, or delayed treatment. *See Smith v. Carpenter*, 316 F.3d 178, 185–86 (2d Cir. 2003). This inquiry is necessarily contextual and fact-specific. *Id.* at 185.

First, "if the unreasonable medical care is a failure to provide *any* treatment for an inmate's medical condition, courts examine whether the inmate's medical condition is sufficiently serious." *Salahuddin*, 467 F.3d at 280 (citing *Smith*, 316 F.3d at 185–86). In deciding whether a condition is sufficiently serious, courts consider whether "'a reasonable doctor or patient would find [it] important and worthy of comment,' whether the condition 'significantly affects an individual's daily activities,' and whether it causes 'chronic and substantial pain.'" *Id.* (citing *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citations omitted)).

In cases where treatment is provided but the inmate alleges it is inadequate, "the seriousness inquiry is narrower." *Id.* The Court focuses on the "inadequacy itself." *Valdiviezo v. Boyer*, 752 F. App'x 29, 32 (2d Cir. 2018) (summary order); *see also Robbs v. McCrystal*, No. 3:20-CV-01584 (MEG), 2023 WL 2526533, at *9 (D. Conn. Mar. 15, 2023) ("if the prisoner is receiving treatment and the conduct at issue is . . . a challenge to the kind of treatment received, the seriousness inquiry focuses on the challenged . . . treatment 'rather than the prisoner's underlying medical condition alone'") (quoting *Smith*, 316 F.3d at 185).

Finally, "[w]hen the basis for a prisoner's Eight Amendment claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged *delay* or *interruption* . . . rather than the prisoner's *underlying medical condition*

alone" to determine whether the deprivation is objectively sufficiently serious. *Smith*, 316 F.3d at 185 (emphasis in original). "[I]n most cases, the actual medical consequences that flow from the alleged denial of care will be highly relevant to the question of whether the denial of treatment subjected the prisoner to a significant risk of serious harm." *Id.* at 187.

### 2. *Subjective Prong*

With respect to the subjective component, "[a]n official acts with the requisite deliberate indifference when that official 'knows of and disregards an excessive risk to inmate health or safety,'" which is "a state of mind 'equivalent to the familiar standard of recklessness' as used in criminal law." *Smith*, 316 F.3d at 184 (*quoting Chance*, 143 F.3d at 702, and then *Phelps*, 308 F.3d at 186). Conduct may rise to the level of deliberate indifference when the prison official's act or failure to act "evinces 'a conscious disregard of a substantial risk of serious harm.'" *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (quoting *Farmer*, 511 U.S. at 839). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Allegations constituting negligence or medical malpractice are insufficient to support an Eighth Amendment deliberate indifference claim. *Thomas*, 832 F. App'x at 92–93 (citing *Hathaway*, 99 F.3d at 553). "A plaintiff cannot establish a claim of deliberate indifference on a theory that the defendant failed to take some available alternative or additional diagnostic techniques or forms of treatment when the defendant's decision is based on sound medical judgment." *Clark v. Quiros*, 693 F. Supp. 3d 254, 286 (D. Conn. 2023) (citing *Estelle v. Gamble*, 429 U.S. 97, 107 (1976) ("[a] medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice…"). Nor does a bad or incorrect diagnosis constitute deliberate indifference. *Harrison v. Barkley*, 219 F.3d 132, 139 (2d Cir. 2000) ("the mere malpractice of medicine," including "a delay in treatment based on a

bad diagnosis," is not deliberate indifference); *see also Estelle*, 429 U.S. at 106 ("A complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.")  So long as "medical judgment was consciously exercised, even if that judgment was 'objectively unreasonable,'" a defendant's actions do "not constitute deliberate indifference." *Parks v. Blanchette*, 144 F.Supp.3d 282, 315 (D. Conn. Nov. 4, 2015) (quoting *Salahuddin*, 467 F.3d at 280).  Moreover, a patient's disagreement with the treatment provided does not rise to the level of deliberate indifference. *See Wright v. Rao*, 622 F. App'x 46, 47 (2d Cir. 2015) (citing *Chance*, 143 F.3d at 703).

### 3.  Personal Involvement

A Plaintiff seeking money damages under Section 1983 from a defendant in their individual capacity must demonstrate "the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013).  "The Second Circuit has defined 'personal involvement' to mean direct participation, such as 'personal participation by one who has knowledge of the facts that rendered the conduct illegal,' or indirect participation, such as 'ordering or helping others to do the unlawful acts.'" *Rivera v. Viger*, No. 3:21-cv-00470 (VAB), 2021 WL 3269095, at *3 (D. Conn. July 30, 2021) (quoting *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001)).

In seeking monetary damages against a supervisor in their individual capacity for allegedly unconstitutional acts, "there is no special rule for supervisory liability." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020).  "Instead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Id.* (quoting *Iqbal*, 556 U.S. at 676).  "A supervisor's mere knowledge of a constitutional violation is insufficient to establish personal involvement." *Fautner v. Quiros*, No.

3:24-cv-01604 (MPS), 2024 WL 4880704, at *4 (D. Conn. Nov. 25, 2024) (citing *Tangreti*, 983 F.3d at 616–17).

    B.  Discussion

        *1.  Personal Involvement*

As an initial matter, the Court concludes that Plaintiff has adequately pleaded the personal involvement of all non-dismissed Defendants in this action.

First, as to Defendant Figueroa, Plaintiff has plausibly alleged that she had sufficient personal involvement for the Eighth Amendment claim to proceed against her. Plaintiff submitted an HSAR on January 16, 2024, pursuant to proper procedure. *See* ECF No. 20-1 at 9. Plaintiff's grievance clearly described his injury, continuing pain, and his failure to receive timely or proper follow-up care. *Id.* at 7–8. The response noted that Plaintiff's request for an administrative remedy "was reviewed with RCOO Figueroa," and that she was "aware of [Plaintiff's] situation and will review . . . with the providers involved." *Id.* at 9.

While Defendants cite caselaw that "mere receipt" of a grievance is insufficient for supervisory liability in a § 1983 case, Defs.' Br., ECF No. 35-1 at 16 (quoting *Calhoun v. Quiros*, No. 3:23-CV-00715 (SVN), 2023 WL 8618745, at *6 (D. Conn. Dec. 13, 2023)), Plaintiff has alleged more than simple receipt. Defendant Figueroa was on notice of Plaintiff's continued pain and the HSAR response notes that she would take affirmative action to "review" his case with the appropriate medical providers. ECF No. 20-1 at 9. Plaintiff alleges that RCOO Figueroa then never followed up on Plaintiff's requests, despite agreeing to do so. This suffices for personal involvement.[3] *See Young v. Choinski*, 15 F. Supp. 3d 172, 191–92 (D. Conn. Mar. 13, 2014)

---

[3] As to Plaintiff's second notice to RCOO Figueroa on January 27, 2024, which was not made pursuant to the administrative remedy procedures, her failure to respond to this notice would not be sufficient to independently establish personal involvement. *See Calhoun*, WL 8618745, at *6 (finding that sending inmate request forms regarding conditions of confinement to prison supervisors, without more, does not establish personal involvement.)

(recognizing that, "when a supervisory prison official receives a particular grievance, personally reviews it, and responds and/or takes action in response, such conduct may constitute sufficient 'personal involvement' to establish individual liability for the alleged constitutional violation" and collecting cases). Thus, Plaintiff has plausibly alleged RCOO Figueroa was personally involved in the alleged Eighth Amendment violation.

Next, Plaintiff has sufficiently alleged the personal involvement of Defendants PA Sullivan, Dr. Fedus, and Dr. Maletz in aspects of the alleged Eighth Amendment violation. Although Defendants claim PA Sullivan "is not alleged to have the authority to contravene the treatment plan put in place by Maletz or Fedus" or to have "acted contrary to the treatment plan," those arguments are substantive defenses against PA Sullivan's liability for an Eighth Amendment violation, not arguments relevant to determining her personal involvement in the alleged constitutional violation. ECF No. 35-1 at 16. Based on Plaintiff's allegations, PA Sullivan was involved in the conversation to delay the x-ray and the decision to deny Plaintiff access to his cane while he was on crutches, and was aware of his continued pain when she saw him on December 21, 2023. ECF No. 20 ¶¶ 19–20, 24–25, 36.

So, too, were Drs. Fedus and Maletz personally involved, for similar reasons. Dr. Fedus specifically decided against ordering an x-ray when Plaintiff was first seen, *see id.* ¶¶ 20, 29, 36, and Dr. Maletz ordered that Plaintiff's crutches be returned, allegedly prematurely, *id.* ¶¶ 45–46. While it is true that Dr. Maletz was not personally involved in Plaintiff's pain management claims, Plaintiff's Eighth Amendment claim broadly covers his delayed treatment for his ankle fracture, in which Dr. Maletz was personally involved, and is not limited solely to Plaintiff's pain management claims. Thus, it would be improper to dismiss Dr. Maletz from the Eighth Amendment cause of action on grounds of lack of personal involvement.

12

Thus, the Court rejects Defendants' arguments that Plaintiff has not sufficiently alleged their personal involvement in the alleged Eighth Amendment violation.

### 2. *Objective Prong*

At oral argument, Defendants stated they do not challenge, for purposes of their motion to dismiss, that Plaintiff has alleged sufficient facts related to the objective component of a deliberate indifference claim. *See also* ECF No. 35 at 10–14 (arguing that Plaintiff fails to plead that Defendants acted with the requisite mental state and failing to mention the objective component). Thus, for purposes of assessing Defendants' motion, the Court treats the alleged delay in treating Plaintiff's ankle injury and the injury itself as sufficiently serious to establish the objective prong of an Eighth Amendment claim.

### 3. *Subjective Prong*

The Court finds that Plaintiff has not adequately pleaded that Defendants Figueroa or Sullivan had the requisite reckless disregard required to support an Eighth Amendment claim, but has done so with respect to his allegations that Defendants Fedus and Maletz unreasonably delayed his follow-up care beginning in January of 2024.

#### a. RCOO Figueroa

First, Plaintiff has not sufficiently alleged that RCOO Figueroa acted with reckless disregard to Plaintiff's injury and the alleged delay in treatment.

As discussed above, RCOO Figueroa was aware of Plaintiff's injury, pain, and delay in receiving an x-ray, *see* ECF No. 20-1 at 6–9, and, based on a response to a HSAR, affirmatively promised to "review" Plaintiff's administrative remedy request with the relevant providers, *id.* at 9. Despite this, RCOO Figueroa never responded or updated Plaintiff as to whether she indeed followed up with Plaintiff's providers, or of the results of any such discussions.

First, the Court rejects Defendants' argument that even if RCOO Figueroa was aware of Plaintiff's complaints and promised to review them, she could not take any corrective action with respect to Plaintiff's health care plan as she is a prison administrator, not a medical professional. *See* ECF No. 35-1 at 16; ECF No. 20 ¶ 5 (alleging Figueroa is the Regional Chief Operating Officer for the Department of Correction). This is not necessarily so. Plaintiff's HSAR requested an administrative remedy, not diagnosis/treatment remedy. ECF No. 20-1 at 7. Further, Plaintiff did not specifically request a change to his health care plan; instead, Plaintiff stated that *any* remedy "the RCOO deem [sic] fit in handle [sic] this would be satisfactory for me." *Id.* at 8. Given RCOO Figueroa's managerial role, and Plaintiff's stated flexibility on the remedy she could provide, it is plausible that RCOO Figueroa could have taken *some* kind of remedial action but failed to do so.

But Plaintiff fails to allege any facts to suggest that RCOO Figueroa was more than merely negligent when she failed to either review Plaintiff's treatment (or, more charitably, conducted the review but failed to report back to him). Absent allegations rising to the level of recklessness, Plaintiff's Eighth Amendment claim against RCOO Figueroa fails.

### b.  Dr. Fedus

Plaintiff has sufficiently alleged an Eighth Amendment claim against Dr. Fedus, but only in part. At oral argument, Plaintiff contended Dr. Fedus violated his Eighth Amendment rights in four ways, by:  (1) failing to initially diagnose Plaintiff's ankle fracture and delaying proper diagnosis; (2) failing to timely order Plaintiff's x-ray; (3) removing Plaintiff's walking support without examination; and (4) failing to provide adequate pain medication. Plaintiff's complaint also alleges Dr. Fedus contributed to months of Plaintiff walking around in pain because of a lack of follow-up treatment. *See* ECF No. 20 ¶ 63.

First, the Court concludes that Dr. Fedus is not liable under the Eighth Amendment for his misdiagnosis of Plaintiff's fracture, under the clear case law providing that misdiagnosis cannot

support an Eighth Amendment claim. *See, e.g.*, *Harrison*, 219 F.3d at 139. At oral argument Plaintiff contended that in refusing PA Sullivan's suggestion to take an x-ray of Plaintiff's ankle, Dr. Fedus did not misdiagnose the fracture, but rather *failed entirely to diagnose* it until weeks later. This argument does not appear in Plaintiff's briefing; but in any event, it also ignores that Dr. Fedus did issue an initial diagnosis of a "[s]prain strain." ECF No. 20-1 at 4. Thus, Dr. Fedus' later determination that Plaintiff indeed had a fracture would make his initial diagnosis of a "[s]prain strain" at most a negligent misdiagnosis that is not actionable under the Eighth Amendment. *See Harrison*, 219 F.3d at 139; *Barnes v. Uzu*, No. 20-CV-5885 (KMK), 2022 WL 784036, at *13 (S.D.N.Y. Mar. 15, 2022) (finding no Eighth Amendment violation where the doctor allegedly misdiagnosed the plaintiff by using the wrong diagnostic test, and collecting similar cases); *Beaman v. Unger*, 838 F. Supp. 2d 108, 110 (W.D.N.Y. 2011) (missed/delayed diagnosis of hand fracture insufficient to state Eighth Amendment claim). And even assuming that when PA Sullivan recommended taking Plaintiff "down the hall," it meant the burden to take an x-ray was negligible, Dr. Fedus asserted a valid medical reason not to do so: that a fracture would not appear for at least two weeks on an x-ray. *See* ECF No. 20 ¶¶ 19–20. When "medical judgment was consciously exercised, even if that judgment was 'objectively unreasonable,'" there is no deliberate indifference. *Parks*, 144 F. Supp. 3d at 315 (quoting *Salahuddin*, 467 F.3d at 280); *see also Smith*, 316 F.3d at 184 ("Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation.").

Likewise, Plaintiff has failed to allege that Dr. Fedus' delay in ordering an x-ray amounted more than medical negligence. Although Dr. Maletz allegedly stated that if an x-ray had been taken on November 28, 2023, the fracture would have been visible and Plaintiff would have been

placed in a cast, *see* ECF No. 20 ¶ 38, Plaintiff has failed to allege any facts suggesting that Dr. Fedus deliberately delayed the x-ray or was otherwise reckless in his treatment of Plaintiff's injury. Again, while Dr. Fedus' conduct may have been negligent, there are insufficient allegations to suggest he was deliberately indifferent to Plaintiff's health.   Notably, Plaintiff himself characterizes some of Dr. Fedus' actions as misdiagnosis, which is not actionable under the Eighth Amendment.  *See* ECF No. 20 ¶¶ 63, 73.  Moreover, the United States Supreme Court has held that failure to order an x-ray does not amount to deliberate indifference.  *See Estelle*, 429 U.S. at 107; *see also Vento v. Lord*, No. 96 Civ. 6169 (SS), 1997 WL 431140, at *5 (S.D.N.Y. July 31, 1997) (Sotomayor, D.J.) (holding that the plaintiff's allegation that the defendants failed to order new x-rays to diagnose her pain "merely constitutes a challenge to defendants' medical judgment" and was insufficient to state an Eighth Amendment claim).

There are also insufficient allegations to suggest that Dr. Fedus was in any way responsible for requiring Plaintiff to return his crutches on or about December 12, 2023.  ECF No. 20 ¶ 24. Plaintiff alleges only that he was "told by an Officer that Medical needed him to return the crutches," but he does not allege that Dr. Fedus (or any other Defendant) was responsible for this decision.  *Id.* ¶ 25.  Although Plaintiff alleges that Dr. Fedus did participate in the decision to deprive him of his cane while he had the crutches, that allegation, standing alone, does not rise to the level of deliberate indifference, given that Dr. Fedus concurrently ordered the crutches for him.

Finally, with respect to Plaintiff's allegations concerning the prescription for Meloxicam, Dr. Fedus' decision not to initially prescribe pain medication is a medical judgment that is not actionable under the Eighth Amendment.  *See Parks*, 144 F. Supp. 3d at 315.  Plaintiff's disagreement with this decision does not elevate it to a constitutional violation.  *See Wright*, 622 F. App'x at 47.   Moreover, although Plaintiff was unable to receive the pain medication

immediately after it was prescribed, there are no allegations to suggest that Dr. Fedus was responsible for—or even knew about—the delay in dispensing it.

The Court will permit Plaintiff to proceed with his Eighth Amendment claim against Dr. Fedus for the alleged delay in treatment beginning in January of 2024, however.  Plaintiff alleges that he wrote more than ten medical requests about his pain between approximately January 2, 2024, and April of 2024, ECF No. 20 ¶ 39, three of which are cited in his amended complaint. While the first two cited medical requests do not save Plaintiff's Eighth Amendment claim against Dr. Fedus, the third does.  First, although Plaintiff alleges he sent a medical request on an unspecified date to Dr. Fedus and Dr. Maletz requesting an MRI or CT scan to check for ligament damage, their failure to order such a scan does not rise to the level of deliberate indifference, and can be fairly characterized as a difference in opinion about treatment.  *See Estelle*, 429 U.S. at 107; *Vento*, 1997 WL 431140, at *5; *Wright*, 622 F. App'x at 47; *Joyner v. Greiner*, 195 F.Supp.2d 500, 504 (S.D.N.Y. 2002) ("[t]he fact that plaintiff wanted an MRI done does not mean that the doctor who refused to order one was deliberately indifferent to his medical needs.").  Next, Plaintiff's HSAR dated January 16, 2024, appears to have been routed to RCOO Figueroa, and there is no allegation that it was brought to Dr. Fedus' attention.  *See* ECF No. 20 ¶¶ 41–42; ECF No. 20-1 at 9.

That leaves Plaintiff's April 8, 2024, IRF, which was submitted to Drs. Fedus and Maletz, among other individuals.  *Id.* ¶ 48.  Plaintiff complained of pain and requested to see a provider, and received a response that he was "on the list to see the provider."  ECF No. 20-1 at 32.  But Plaintiff alleges he has not been seen by Dr. Fedus or Dr. Maletz since January 2, 2024.  *See* ECF No. 20 ¶ 50.  Given that the amended complaint making this allegation was filed on September 3, 2024, this nine-month delay in providing Plaintiff with a follow-up appointment—despite his

complaints of continued pain and allegation that there was "something really wrong" with his leg, ECF No. 20-1 at 32—could plausibly suggest deliberate indifference on the part of Dr. Fedus, to whom Plaintiff's April 8, 2024, IRF was addressed.[4]  *See Silva v. Kilham*, No. 3:19-cv-1719 (VLB), 2020 WL 2404922, at *5 (D. Conn. May 12, 2020) (Eighth Amendment claim survived motion to dismiss where providers knew of the plaintiff's serious medical needs but ignored his need for pain relief and timely medical care).

For these reasons, Defendants' motion to dismiss is granted in part and denied in part as to Plaintiff's Eighth Amendment claim against Dr. Fedus.  Plaintiff may proceed with this claim with respect to the alleged delay in treatment beginning in January of 2024.

### c.  Dr. Maletz

Likewise, Plaintiff adequately stated an Eighth Amendment claim against Dr. Maletz only as to the delay in treatment beginning in January of 2024.  Plaintiff contends that Dr. Maletz "failed to ensure consistent follow-up care, ignored Plaintiff's requests for additional imaging . . . and delayed in providing effective treatment."  ECF No. 36 at 22.

As to Plaintiff's requests for additional imaging, Dr. Maletz's alleged failure to order an MRI or CT scan does not rise to the level of deliberate indifference, and can be fairly characterized as a difference in opinion about treatment.  *See Estelle*, 429 U.S. at 107; *Vento*, 1997 WL 431140, at *5; *Wright*, 622 F. App'x at 47; *Joyner*, 195 F.Supp.2d at 504.

As to Dr. Maletz's February 2024 order that Plaintiff turn his crutches in, this also does not rise to the level of deliberate indifference.  In reviewing Plaintiff's x-ray on February 20, 2024, Dr. Maletz noted that the x-ray results suggested "complete[] or near complete healing."  ECF No.

---

[4] Discovery may reveal that Dr. Fedus was not personally responsible for scheduling follow-up appointments for patients.  But the Court must draw all reasonable inferences in Plaintiff's favor at the motion to dismiss stage, and thus reasonably infers that Dr. Fedus was on notice of the request for an appointment and yet failed to afford Plaintiff an appointment for at least nine months.

20-1 at 24.  Plaintiff alleges that three days later, Dr. Maletz ordered Plaintiff return his crutches.

ECF No. 20 ¶ 46.  Because Dr. Maletz ordered the crutches returned after exercising his medical

opinion as to his patient's recovery, this decision is not actionable under the Eighth Amendment.

*See Parks*, 144 F.Supp.3d at 315.

But Plaintiff alleges a plausible deliberate indifference claim against Dr. Maletz related to

follow-up care and delay in providing treatment beginning in January of 2024, when his last in-

person follow-up appointment occurred.  As noted above, Plaintiff's April 8, 2024, IRF stated that

he was still experiencing pain and requested to see a provider, but he experienced at least a nine-

month delay in a obtaining a follow-up appointment.  Since Plaintiff's April 8, 2024, IRF was

addressed to Dr. Maletz, there is a plausible inference that he acted recklessly in failing to set up

a follow-up appointment for that lengthy period of time, for the same reasons as explained above

with respect to Dr. Fedus.  *See Silva*, 2020 WL 2404922, at *5.

For these reasons, Plaintiff's Eighth Amendment claim is dismissed in part against Dr.

Maletz, except with respect to the alleged delay in treatment beginning in January of 2024.

### d.  PA Sullivan

Finally, the Court holds that the complaint fails to state an Eighth Amendment claim

against PA Sullivan.  Plaintiff alleges that PA Sullivan failed to coordinate the return of Plaintiff's

cane, following the requirement that Plaintiff return his prescribed crutches.  *See* ECF No. 36 at

23–24; ECF No. 20 at 11.  While this action may have been negligent, Plaintiff has failed to allege

any facts to suggest that it rises to the level of recklessness, particularly without any factual

allegations concerning Plaintiff's need for the cane in the first instance.  And as there are no

allegations suggesting PA Sullivan was involved in the delay in follow-up care beginning in

January of 2024, no such claim can proceed against her.

Defendants' motion to dismiss is therefore granted as to PA Sullivan, with leave to amend to add allegations concerning the deprivation of Plaintiff's cane.

## IV.    STATE LAW RECKLESSNESS[5]

The Court holds Plaintiff also has plausibly alleged Defendants Drs. Fedus and Maletz acted recklessly under state law, with respect to an allegedly delay in follow-up care beginning in January of 2024, but has not plausibly alleged the same against Defendants Figueroa and Sullivan.

State employees are immune from suits alleging negligence, but not from those alleging recklessness.  Connecticut General Statutes § 4-165 provides in relevant part that "[n]o state officer or employee shall be personally liable for damages or injury, not wanton, reckless or malicious, caused in the discharge of his or her duties or within the scope of his or her employment." Although the Connecticut Supreme Court has not defined the standard for wanton, reckless, or malicious conduct under § 4-165, in the common-law context it has defined the phrase in a manner "not unlike the *mens rea* requirement of a deliberate indifference claim."  *See Collins v. Feder*, No. 3:23-cv-71 (KAD), 2024 WL 1658442, at *4–5 (Apr. 17, 2024) (citing *Martin v. Brady*, 261 Conn. 372, 379 (2002) (noting that wanton, reckless, or malicious conduct is "such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of the action")).

Because Plaintiff has plausibly alleged that Drs. Fedus and Maletz satisfied the *mens rea* requirement of a deliberate indifference claim, he also has plausibly alleged they acted recklessly, for purposes of his state law claim.  But because Plaintiff has not plausibly alleged recklessness on the part of RCOO Figueroa or PA Sullivan, those two Defendants are entitled to immunity

---

[5] While Plaintiff's amended complaint pleads a claim of negligence under state law, this is presumably due to the Court's previous error in stating which claims may proceed.  *See* Order, ECF No. 21.  The substance of Plaintiff's amended complaint and briefing addresses a state law claim of recklessness.  As such, the Court addresses the state law claim of recklessness, not negligence.

under § 4-165.  Thus, Defendants' motion to dismiss Plaintiff's state law recklessness claim is granted in part as to Defendants Figueroa and Sullivan, and denied in part as to Defendants Fedus and Maletz.

## V.    QUALIFIED IMMUNITY

The Court cannot conclude, at this juncture, that Defendants Fedus, Maletz, and Sullivan are protected by qualified immunity.  Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  While defendants may assert a claim for qualified immunity on a motion to dismiss, they face a "formidable hurdle," given that the plaintiff "is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense."  *McKenna v. Wright*, 386 F.3d 432, 434, 434, 436 (2d Cir. 2004).

As the Court has determined, Plaintiff has plausibly alleged that Defendants Fedus and Maletz acted recklessly in denying Plaintiff follow-up treatment after January of 2024.  While Defendants' one-sentence argument that no appellate or Supreme Court case holds that misdiagnosis or medical malpractice alone is sufficient to state a deliberate indifference claim is correct, *see* ECF No. 35-1 at 21, the Eighth Amendment claim that is proceeding relates to the alleged nine-month delay in providing Plaintiff with a follow-up appointment, despite his repeated complaints of pain.  Defendants Fedus and Maletz make no qualified immunity argument with respect to this aspect of Plaintiff's Eighth Amendment claim. Thus, qualified immunity for them is inappropriate at this point, without prejudice to raising the defense again further into the litigation.

With respect to PA Sullivan, the Court is allowing Plaintiff the opportunity to amend his complaint to add further allegations concerning her actions of depriving him of his cane, should he choose to do so.  Given that Defendants make no specific argument as to PA Sullivan's entitlement to qualified immunity and that Plaintiff may choose to amend his allegations against her, the Court defers decision as to whether she is entitled to qualified immunity.

Finally, the Court concludes that RCOO Figueroa is entitled to qualified immunity, as an alternative basis for dismissal.  Plaintiff has cited to no authority suggesting that a regional chief operating officer—or a prisoner administrator of like stature—can be liable for an Eighth Amendment deliberate indifference claim for failing to review an inmate's medical treatment with his providers or failing to report back to the inmate after undertaking such a review.  Thus, the Court cannot conclude that RCOO Figueroa violated Plaintiff's clearly established constitutional rights through her actions.  Because RCOO Figueroa is entitled to qualified immunity, the Court will not grant leave to amend as to her.

## VI.    CONCLUSION

For the reasons described herein, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART.  The motion is granted as to Defendant Figueroa without leave to amend; granted as to Defendant Sullivan with leave to amend; and granted in part and denied in part as to Defendants Fedus and Maletz.

Plaintiff has two options in response to this ruling.  First, he may file a second amended complaint by **October 16, 2025**, to attempt to rectify the deficiencies identified in this order in his claims against Defendant Sullivan only.  Any such second amended complaint may include the Eighth Amendment and recklessness claims against Defendants Fedus and Maletz that the Court

has permitted to proceed in this ruling, but may not further amend them.[6]  Alternatively, Plaintiff

may file a notice by **October 16, 2025**, indicating that he does not wish to amend his claims against

Defendant Sullivan, and wishes to proceed only as to the Eighth Amendment and recklessness

claims against Defendants Fedus and Maletz that the Court has allowed to proceed in this ruling.

The Court had previously stayed the parties' discovery obligations during the pendency of

Defendants' motion to dismiss.  *See* Order, ECF No. 38.  The discovery stay will remain in place

until the Court receives either an amended complaint or the notice referenced above.

**SO ORDERED** at Hartford, Connecticut, this 25th day of September, 2025.

 */s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE

---

[6] As the deficiencies with respect to Plaintiff's other Eighth Amendment allegations against Defendants Fedus and Maletz are substantive, leave to amend is not granted with respect to them.  *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).